UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER BODE,

    Plaintiff,

v.                                            Case No. 8:19-cv-2222-T-30CPT

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the Commissioner's decision denying his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, I respectfully recommend that the Commissioner's decision be reversed and the case be remanded.

I.

The Plaintiff was born in 1976, is high school educated, earned a degree in the culinary arts, served in the United States Army, and has past relevant work experience as a security guard. (R. 25, 252-53, 1791). In mid-2016, he applied for DIB and SSI, alleging disability as of January 18, 2014, due to headaches, depression, anxiety, severe back pain, lumbar and cervical spine impairments, as well as other neurological disorders. (R. 218-28, 250). The Social Security Administration (SSA) denied the

Plaintiff's applications both initially and on reconsideration. (R. 141-43, 146-50, 152-56).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on April 4, 2018. (R. 33-60). The Plaintiff was represented by counsel at that hearing and testified on his own behalf. (R. 36-54). A vocational expert (VE) also testified (R. 55-60).

In a decision dated September 28, 2018, the ALJ found that the Plaintiff: (1) was insured for DIB through March 31, 2017, and had not engaged in substantial gainful activity since his alleged onset date of January 18, 2014; (2) had the severe impairments of hearing loss, a history of headaches, and cervical spine degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) for light work subject to certain physical and environmental limitations;[1] and (5) could perform his past relevant work as a security guard and, alternatively, was capable of engaging in other jobs that exist in significant numbers in the national economy. (R. 16-27). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

---

[1] In particular, the ALJ determined that the Plaintiff could frequently climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds. (R. 22). The ALJ also determined that the Plaintiff should never be in environments requiring concentrated exposure to hazards, vibration, and loud noise. *Id.*

2

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[3]  Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4),

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

416.920(a)(4)).  While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove that he cannot perform the work identified by the Commissioner.  *Id.*  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

    A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).  In evaluating whether substantial evidence supports the Commissioner's decision, the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence.  *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (per curiam) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (per curiam) (citation omitted).  "[W]hile the court reviews the

Commissioner's decision with deference to [his] factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

### III.

The Plaintiff raises four arguments on appeal: (1) the ALJ improperly discounted the opinions of two of the Plaintiff's treating physicians, Frank Escobar-Roger, M.D., a psychiatrist, and Swarnamba Lokesh, M.D., an internist; (2) the ALJ's RFC determination is flawed due to the diminished weight he gave to Drs. Escobar-Roger and Lokesh's opinions and because he failed to address a disability rating the Plaintiff received from the Veteran's Administration (VA); (3) the ALJ unduly relied on a lack of objective evidence to discredit the Plaintiff's subjective complaints of pain; and (4) the ALJ failed to pose a hypothetical to the VE that described all of the Plaintiff's limitations. (Doc. 17). The Commissioner counters that each of the Plaintiff's arguments is without merit. *Id.*

Upon a thorough review of the record and the parties' submissions, I find that remand is necessary because the ALJ did not articulate good cause for discounting Dr. Escobar-Roger's opinions and for further consideration of the Plaintiff's mental impairments, as well as to address the VA's disability determination.

### A.

In reviewing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R.

5

§ 404.1527(b)); *see also* 20 C.F.R. § 416.927(b)) .[4]  "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416,927(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Id.* at 1179.  In rendering this determination, an ALJ must assess: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  While an ALJ is required to consider each of these factors, it is not necessary that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir.

---

[4] Although these regulations have been amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because the Plaintiff's applications were submitted in mid-2016, the older version of the regulations govern here.

6

2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(a)(2), (c)(1)-(2), 416.927(c)(1)-(2)). Treating doctors' opinions are accorded the most deference because there is a greater likelihood that these healthcare providers will "be able to give a more complete picture of the [claimant's] health history." *Schink*, 935 F.3d at 1259 (citing 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ must give the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41; *see* 20 C.F.R. §§ 404.1527(c)(2), 927(c)(2) (stating that "controlling weight" is given to a treating physician's opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."). If an ALJ finds that the treating physician's medical opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting the opinion, and those reasons must be supported by substantial evidence. *Schink*, 935 F.3d at 1259 ("We have explained that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician.") (citing *Winschel*, 631 F.3d at 1179).

The opinion of a one-time examining doctor does not merit such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.

7

1987)). And, a non-examining physician's opinion is generally entitled to the least deference. *See Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.*; *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Where a claimant presents a colorable claim of a mental impairment, the ALJ must apply the Psychiatric Review Technique (PRT) mandated by the Regulations. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a. 416.920a. This technique requires that the ALJ assess the Plaintiff's mental impairment using the following four broad functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the degrees of limitation in the four areas are "none" or "mild," the SSA will generally conclude that the claimant's impairment(s) is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

The Regulations also require that the ALJ provide a specific explanation for his opinion, including the degree of limitation found in the functional areas listed above.

*Id.* at §§ 404.1520a(c)(4), (e)(4), 416.920a(c)(4), (e)(4). The ALJ must then incorporate the results of the PRT into his findings and conclusions. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam).

In this case, there were three mental healthcare providers who rendered opinions regarding the Plaintiff's mental capabilities and limitations during the relevant time period: (1) Dr. Escobar-Roger, who treated the Plaintiff from October 2016 through December 2017 and who completed a Mental Impairment Questionnaire on February 2, 2018 (R. 1899-1903); (2) Lawrence Annis, Ph.D., a state agency medical consultant who analyzed the Plaintiff's claim file in August 2016 at the initial level of administrative review (R. 89-90); and (3) Nancy Hinkeldey, Ph.D., another state agency medical consultant who examined the Plaintiff's claim file in September 2016 at the reconsideration level (R. 104-05).[5]

The ALJ discussed each of these doctors' opinions at step two of the sequential evaluation process in connection with his finding that the Plaintiff had the non-severe medically determinable impairments of depression and anxiety. (R. 20-21). While affording "considerable weight" to the assessments of Drs. Annis and Hinkeldey, the ALJ accorded only "some," "little," or "no" weight to several of Dr. Escobar-Roger's opinions. *Id.*

---

[5] The record also contains a report from Michael Greenberg, Ph.D., who conducted a mental status examination of the Plaintiff in April 2012 relative to a prior benefits application submitted by the Plaintiff. (R. 334-36). The ALJ only mentioned Dr. Greenberg's examination briefly in his decision (R. 19), and because the Plaintiff raises no challenge with respect to Dr. Greenberg in his appeal, I do not address that physician's report herein.

9

In particular, the ALJ elected to give "some weight" to Dr. Escobar-Roger's finding that the Plaintiff scored a 65 on the Global Assessment Functioning (GAF) scale.[6] In support of this determination, the ALJ noted that this score was "consistent with the notes that precede them," and because Dr. Escobar-Roger "should be quite familiar with the [Plaintiff]'s condition[, as] he has routinely treat[ed] the [Plaintiff]'s psychiatric conditions for more than a year." (R. 20).

By contrast, in the ALJ's subsequent analysis of the Paragraph B criteria, he opted to give only little weight to Dr. Escobar-Roger's opinion that in the first functional area the Plaintiff had "moderate to marked limitations in remembering locations and work procedures and understanding and remembering detailed instructions." (R. 20). The ALJ reached this conclusion because, in his view, Dr. Escobar-Roger's "treatment notes, including the GAF scores[,] consistently indicated only mild symptoms and functional limitations overall." *Id*.

In his analysis of the third functional area (concentration, persistence, or maintaining pace), the ALJ cited the same reason in affording little weight to Dr. Escobar-Roger's opinion that the Plaintiff was moderately to markedly limited in "several areas relevant" to that category. (R. 21).

---

[6] The GAF scale is used by mental health professionals "to rate the occupational, psychological, and social functioning of adults." *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (per curiam) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000) (DSM IV). As the ALJ correctly noted, a GAF score between 61 to 70 suggests either "some mild symptoms" or "some difficulty in social, occupational, or school functioning." (R. 20).; *see also* (DSM IV).

And, finally, with respect to the fourth functional area (adapting or managing oneself), the ALJ accorded "no weight" to Dr. Escobar-Roger's determination that the Plaintiff's mental impairments would cause severe absenteeism. (R. 21). In support of that finding, the ALJ merely noted that "nothing in the records supports" Dr. Escobar-Roger's determination. *Id.*

The ALJ's stated reasons for discounting Dr. Escobar-Roger's opinions do not amount to good cause. To begin, as the ALJ recognized, GAF scores bear no direct correlation to the requirements of the listings for mental disorders and are "of limited use" when evaluating the specific Paragraph B criteria. *Id.*; *see also Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015) (per curiam) (citation omitted) (noting that the Commissioner has concluded that the GAF scale does not have a direct correlation to the severity requirements in the mental disorders listings); *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015) (per curiam) (same); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). It is therefore difficult to reconcile the ALJ's acknowledgment that GAF scores are of little value when evaluating the Paragraph B criteria with his reliance on those same scores to undermine Dr. Escobar-Roger's assessment as to specific limitations within several of the Paragraph B functional areas. (R. 20-21).

I also find lacking the ALJ's bare assertions that Dr. Escobar-Roger's opinions were inconsistent with the doctor's own treatment notes. In order to rely on such a rationale for rejecting a treating physician's opinion, an ALJ must clearly articulate

11

the evidence that led him to reach that determination. The ALJ did not do so here. *Schink*, 935 F.3d at 1263 (finding ALJ's statement that the treating doctors' questionnaires were "inconsistent with other substantial evidence of record" inadequate where "the ALJ failed to clearly articulate what evidence led him to this conclusion") (citations omitted). The ALJ's conclusory claim that "nothing in the record support[ed]" Dr. Escobar-Roger's assessments is likewise deficient. *Hubbell-Canamucio v. Comm'r of Soc. Sec.*, 2016 WL 944262, at *4 (M.D. Fla. Mar. 14, 2016) (finding conclusory statements that an opinion is inconsistent or not supported by the record are insufficient to show good cause for rejecting a treating doctor's opinion unless the ALJ articulates factual support) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)); *Freeman v. Comm'r of Soc. Sec.*, 2013 WL 6244527 at *7 (M.D. Fla. Dec. 3, 2013) (noting that the ALJ failed to establish good cause for discounting treating doctor's opinion where the ALJ's "conclusions [we]re unsubstantiated by reference to specific evidence in the record, and provid[ed] the reviewing Court with little guidance in determining whether the findings are supported by substantial evidence.") (citations omitted); *Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

    The fact that the ALJ gave considerable weight to the opinions of the two non-examining psychologists, Drs. Annis and Hinkeldey—both of whom found the Plaintiff had only mild mental limitations and no severe mental impairment—does not

alter my conclusion. It is well established that the opinion of a non-examining doctor cannot, by itself, supply the requisite good cause for rejecting the assessment of a treating physician. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (per curiam) (providing that a non-examining doctor's opinion does not constitute the good cause needed to reject a treating doctor's opinion) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985); *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018) (per curiam) (providing that the opinions of non-examining doctors do not amount to good cause for rejecting the opinion of a treating physician) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)); *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 959 (11th Cir. 2016) (recognizing that a non-examining doctor's opinion, by itself, does not constitute good cause for giving less weight to a treating doctor's opinion) (citing *Johns v. Bowen*, 821 F.2d. 551, 554 (11th Cir. 1987)). And, while an ALJ may in certain circumstances credit a non-examining doctor's opinion over that of a treating doctor, the ALJ must first articulate good cause for discounting the treating physician's opinion. *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. 2011) (per curiam) (finding that the ALJ did not err in giving more weight to a consulting doctor's opinion "because the ALJ articulated good cause for discounting the opinions of [the claimant's] treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's own clinical findings"). As discussed above, the ALJ did not articulate good cause for discounting Dr. Escobar-Roger's

opinion before granting considerable weight to the non-examining doctors's assessments.

B.

Even assuming *arguendo* that the ALJ did not err in his consideration of Dr. Escobar-Roger's opinion at step two, the ALJ's step-four finding regarding the Plaintiff's RFC is nonetheless flawed. In rendering an RFC determination, ALJ must evaluate the claimant's maximum ability to do work despite his impairments, both severe *and* non-severe. *Schink*, 935 F.3d at 1268-69 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). The RFC analysis therefore represents a more detailed evaluation of the functional import of a claimant's impairments than that required at step two. *Id.* at 1269 (noting that "the mental RFC assessment used at steps 4 and 5 of the process 'requires a more detailed assessment by itemizing various functions contained in the broad categories found in [P]aragraph B'"); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that the criteria used to rate severity of mental impairments at step two do not amount to an RFC assessment and that a "more detailed" evaluation is mandated at steps four and five, requiring "itemizing various functions contained in the broad" functional areas).

By my review, the ALJ did not satisfy his obligations on this front either. While ostensibly acknowledging that his Paragraph B findings at step two were not a substitute for the more thorough mental RFC assessment necessitated at steps four and five, the ALJ's subsequent discussion regarding the Plaintiff's RFC and the Plaintiff's

14

ability to work contains no such assessment. *See* (R. 22-26). Notably, the ALJ's RFC evaluation omits any discussion of the extent to which the Plaintiff's medically determinable impairments of depression and anxiety altered his vocational capacity. Indeed, the ALJ did not make *any* findings at step four (or in his alternative vocational findings at step five) regarding the Plaintiff's mental impairments or the evidence showing how they affected the Plaintiff's ability to work. Instead, the ALJ focused entirely on Plaintiff's physical impairments. This was error. *Schink*, 935 F.3d at 1269.

That the ALJ may have considered the Plaintiff's mental conditions in his RFC assessment *sub silentio* and impliedly determined that they did not significantly limit the Plaintiff's work-related mental abilities does not cure this deficiency. *Id.* As the Eleventh Circuit noted in *Schink*, "our precedent holds [that an] ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Id.* (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)); *see also Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam) (holding that failure to consider a claimant's impairments in combination "requires that the case be vacated and remanded for the proper consideration").

C.

The ALJ's RFC determination is flawed in another respect as well. As the Plaintiff notes, the medical records reveal that the VA assessed him with a ten percent service-connected disability, apparently due to tinnitus (i.e., a perceived noise or ringing in the ears). *See* (R. 334, 1992). While I offer no opinion as to the relevance

of this rating with respect to the Plaintiff's disability claim given that he did not allege this impairment as a basis for his disability,[7] I find that the ALJ's failure to discuss this rating further supports remand.

In its recent published decision in *Noble v Comm'r of Soc. Sec.*, 963 F. 3d. 1317, 1325 (11th Cir. June 30, 2020), the Eleventh Circuit undertook to resolve "the tension in [its] precedent" regarding the ALJ's duties with respect to disability ratings from other agencies. After analyzing the matter, including the pertinent regulation (20 C.F.R. § 404.1504 (2016)) and the relevant Social Security Ruling (SSR 06-03P), the court in *Noble* concluded that an ALJ "must discuss a decision from another [agency] finding the claimant disabled but may refuse to follow the other agency's decision when the record contains more recent medical evidence supporting a conclusion that the claimant is not disabled." 963 F.3d at 1329. The *Noble* court gave explicit instructions that, on review: "First, the court must ask whether the ALJ's decision shows that [he] considered the other agency's decision. If the ALJ's decision does not discuss the other agency's decision, the case must be remanded to the Commissioner for consideration of the other agency's decision." *Id.* at 1330 (internal citation omitted). If, on the other hand, "the ALJ discussed the other agency's decision, the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision. If there

---

[7] As previously outlined, the Plaintiff alleged disability due to headaches, depression, anxiety, severe back pain, lumbar and cervical spine impairments, and other neurological disorders. (R. 250). It is not clear from the record whether the Plaintiff's tinnitus may be related to one or more of these conditions, including his headaches and hearing loss.

16

is substantial evidence in the record, then the ALJ's decision should be affirmed." *Id.* (internal citation omitted).

Here, the ALJ did not mention the Plaintiff's VA's disability rating, which is reflected in certain of the medical materials in the record. The VA's disability decision itself is not part of the record, and it is unclear what effort, if any, was made to provide it to the ALJ. While it is true that a claimant bears the burden of proving he is disabled and must therefore produce adequate evidence to support his claim, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), it is also the case that Social Security proceedings are inquisitorial rather than adversarial, *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). As a result, an ALJ has a basic and firmly-established duty to develop a full and fair record of the facts relevant to a claimant's application for benefits. *Washington*, 906 F.3d at 1364; *Ingram*, 496 F.3d at 1269. Although I make no finding about whether the ALJ failed in his duty to develop the record by not acquiring the VA's determination, because remand is necessary on other grounds and given the Eleventh Circuit's recent pronouncements on the matter in *Noble*, the ALJ should at least consider the Plaintiff's disability rating from the VA on remand.[8] This

---

[8] I recognize in this regard that the parties did not have the benefit of the *Noble* decision at the time they submitted their joint memorandum. That said, both the regulation and the SSR that the Eleventh Circuit relied upon for its opinion were in effect at the time of the ALJ's decision. *Noble*, 963 F.3d at 1324 (citing 20 C.F.R. § 404.1504 (2016) (explaining that "[a] decision by any governmental agency . . . about whether you are disabled . . . is based on its rules" and "not binding on us"); SSR 06-03P, 2006 WL 2329939, at *2 (stating that "evidence of a disability decision by another governmental . . . agency cannot be ignored")). And, although that regulation was changed effective March 27, 2017, the revised regulation only applies to

is true even though the VA rated the Plaintiff as having ten percent service-connected disability. Neither the *Noble* decision, the pertinent regulation, nor the relevant SSR appear to make any distinction about the extent of another agency's disability assessment. I therefore see no reason why the ALJ should have simply ignored that rating.

D.

In light of the above findings, the Court need not consider the Plaintiff's remaining claims of error. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record). I do note, however, that because the ALJ's RFC determination is flawed, his concomitant findings regarding the Plaintiff's subjective complaints stemming from the unaddressed matters described above is significantly undermined. In addition, because the ALJ did not discuss the Plaintiff's mental impairments or the VA's disability rating, the ALJ's hypothetical questions to the VE may not have described all of the Plaintiff's limitations. These arguments turn on a number of issues that are better addressed once it is clear that the ALJ has properly assessed the Plaintiff's mental impairments and the medical evidence of record, including the opinion of the Plaintiff's treating physician, Dr. Escobar-Roger, as well as the VA's disability determination.

---

claims filed after the effective date. Because the Plaintiff's applications here were filed in June 2016, the older version of the regulation governs.

## IV.

For the foregoing reasons, I recommend:

1. The Commissioner's decision be reversed and remanded.

2. The Clerk of Court be directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court retain jurisdiction on the matter of attorney's fees and costs pending further motion.

Respectfully submitted this 28th day of July 2020.

*/s/ Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable James S. Moody, Jr., United States District Judge
Counsel of record